UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Timothy Roger BLACK,<br><br>                                    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                                    Defendant. | Case No.:  20-cv-01495-BGS<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF No. 16];**<br><br>**(2) DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF No. 19]; AND**<br><br>**(3) REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

## I.     INTRODUCTION

On August 3, 2020, Plaintiff Timothy Roger Black ("Plaintiff" or "Claimant") filed his Complaint seeking judicial review of the Commissioner of the Social Security Administration's ("Defendant" or "Commissioner") denial of his disability insurance benefits under the Social Security Act.  (ECF No. 1.)[1]  On August 11, 2020, this Court issued an order granting Plaintiff's IFP motion.  (ECF No. 4.)  The Commissioner filed the

---

[1] The Court cites the electronic CM/ECF pagination for citations.

1

Administrative Record on April 13, 2021.  (ECF No. 15.)  On May 17, 2021, Plaintiff filed a Motion for Summary Judgment seeking reversal of the final decision denying benefits and a remand for further administrative proceedings.  (ECF No. 16.)  Plaintiff argued the Administrative Law Judge ("ALJ") committed reversible error for failing to properly evaluate Plaintiff's cyclical vomiting syndrome ("CVS") and for the Plaintiff's mental residual functioning capacity ("RFC") not being supported by substantial evidence.  (*Id.* at 10–22.)  On July 6, 2021, the Commissioner filed his Cross Motion for Summary Judgment and Opposition to Plaintiff's Motion.  (ECF No. 19.)  The Commissioner argued that the ALJ properly evaluated Plaintiff's CVS and that the ALJ's mental RFC was supported by substantial evidence.  (*Id.* at 6–15.)  Plaintiff filed a Reply on July 19, 2021.  (ECF No. 20.)

After careful consideration of the parties' arguments, the administrative record and the applicable law and for the reasons discussed below, Plaintiff's Motion for Summary Judgment (ECF No. 16) is **GRANTED**, the Defendant's Cross Motion for Summary Judgment (ECF No. 19) is **DENIED**, and the case is **REMANDED** for further proceedings consistent with this Order.

## II.   PROCEDURAL HISTORY

Plaintiff filed an application for supplemental security income on February 23, 2018, with an alleged onset date of February 23, 2018.  (ECF No. 15-2 at 16.)  Plaintiff's application was first denied on May 31, 2018, and then denied upon reconsideration on September 14, 2018.  (*Id.*)  At Plaintiff's request, a hearing before an ALJ was held on September 17, 2019 at which Plaintiff was represented by counsel and testified, along with a vocational expert who also provided testimony.  (ECF Nos. 15-4 at 20–21 [request for hearing], 45 [notice of hearing]; ECF No. 15-2 at 39–69 [hearing transcript].)  On October 29, 2019, the ALJ issued a decision finding that Plaintiff was not disabled and denied Plaintiff's application for benefits.  (ECF No. 15-2 at 16–33.)  The Appeals Council denied review on June 9, 2020.  (*Id.* at 2–4.)

### III.   SUMMARY OF FIVE STEPS

The ALJ's decision explains and then goes through each potentially dispositive step of the familiar five-step evaluation process for determining whether an individual has established eligibility for disability benefits.[2]   (ECF No. 15-2 at 17–33); *see Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724–25 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520.

At step one, the ALJ determined that Plaintiff had not "engaged in substantial gainful activity since February 23, 2018, the application date." (ECF No. 15-2 at 19.)  At step two, the ALJ found that Plaintiff had "the following severe impairments: schizoaffective disorder, major depressive disorder, personality disorder, generalized anxiety disorder, and cannabis use disorder, mild, in early partial remission, degenerative disc disease in the cervical spine[.]" (*Id.*)

The ALJ then indicated that although the Plaintiff alleged disability as to his CVS, "there is no evidence that these impairments imposed any additional functional limitations beyond what have already been considered with the claimant's other impairments" and "the symptoms from these impairments have been considered in the residual functional capacity limitations found above. (*Id.*)  The ALJ then held that "the evidence in the record shows that the claimant's symptoms were at times asymptomatic or only occurred

---

[2] In order to qualify for disability benefits, an applicant must show that: (1) he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy.  *See* 42 U.S.C. §§ 423(d)(1)(A), (2)(A).  An applicant must meet both requirements to be "disabled."  *Id.*  The claimant bears the burden of proving he is disabled.  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  But, at step five, the Commissioner bears the burden of showing the claimant can do other kinds of work that exist in significant numbers in the national economy "taking into consideration the claimant's residual functional capacity, age, education, and work experience."  *Id.*

sporadically[.] Furthermore, a CT scan of his abdomen from September 19, 2016 was unremarkable[.] The claimant also reported that he did not return to his gastroenterologist for further treatment, despite being recommended to do so[.] Therefore, the undersigned finds this impairment non-severe." (*Id.* at 20.)

At step three, the ALJ considered whether the Plaintiff's impairments "meet or equal" one or more of the specific impairments or combination of impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1, the listings. *See* 20 C.F.R. §§ 416.920(d), 416.925, 416.926. Here, the ALJ found Plaintiff did not meet a listing. (ECF No. 15-2 at 20–22.)

If the Plaintiff does not meet a listing, the ALJ "assess[es] and makes a finding about [the Plaintiff's] residual functional capacity based on all the relevant medical and other evidence in [the Plaintiff's] case record." 20 C.F.R. § 404.1520(e). A claimant's RFC is the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). The RFC is used at the fourth and fifth steps to determine whether the Plaintiff can do his or her past work (step four) or adjust to other available work (step five). *Id.*

Here, the ALJ found the following RFC for Plaintiff:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can frequently climb ramps and stairs. He can occasionally climb ladders, ropes and scaffolds. He can frequently engage in balancing, stooping, crouching, crawling and kneeling. He is limited to simple, repetitive tasks and limited to having interactions with co-workers, the general public and supervisors no more than frequently.

(ECF No. 15-2 at 22.) At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 31.)

At step five, the ALJ considers whether the Plaintiff can do other work, considering the Plaintiff's age, education, work experience, and the limitations in the RFC. 20 C.F.R. § 404.1520(a)(4)(v). If the Plaintiff can do other available work, then the Plaintiff is found not disabled; but if the Plaintiff cannot do any other available work, then the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v), 404.1520(g); *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). Here, the ALJ heard and relied on a vocational expert's testimony that opined that work existed in significant numbers in the national economy for a person of Plaintiff's age, education, work experience and with the RFC found by the ALJ. (ECF No. 15-2 at 32.)

## IV.   SCOPE OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful claimants to seek judicial review of a final agency decision. 42 U.S.C. § 405(g). This Court has jurisdiction to enter a judgment affirming, modifying, or reversing the Commissioner's decision. *See id.*; 20 C.F.R. § 404.900(a)(5). The matter may also be remanded to the Social Security Administration for further proceedings. 42 U.S.C. § 405(g).

If the Court determines that the ALJ's findings are not supported by substantial evidence or are based on legal error, the Court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). Substantial evidence is "more than a mere scintilla, but may be less than a preponderance." *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001). Substantial evidence is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion." *Id.*

In making this determination, the Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). The Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc.*

*Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).  The Court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."  *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).  "When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

## V.   DISCUSSION

Plaintiff argued that the ALJ erred by: (1) regarding CVS as a 'non-severe' impairment at Step Two; and (2) failing to support Plaintiff's mental RFC determination with substantial evidence.  (*See* ECF No. 16 at 10–22.)  The Court will first address whether the ALJ erred by regarding Plaintiff's CVS as a 'non-severe' impairment at Step Two.

### A. Step 2 – Whether the ALJ Erred in Regarding CVS as a 'Non-Severe' Impairment

#### 1. Applicable Standard

At Step Two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. *Smolen v. Chater*, 80 F.3d 1273, 1289–90 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987)).  The claimant bears the burden at Step Two of showing a medically "severe impairment" or "combination of impairments."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  However, this "burden is slight."  *Lorenzo B. v. Saul*, No. 19-CV-0786-AGS, 2020 WL 4732063, at *1 (S.D. Cal. Aug. 2020); *see also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) ("A claimant's burden to establish a severe impairment at step two is only 'mild.'").  Step Two is used as a "de minimis screening device used to dispose of groundless claims."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

At this step, every impairment is "severe" unless the medical evidence "clearly establishe[s]" that the alleged impairment has only a "slight abnormality that has no more than a minimal effect on an individual's ability to work." *Lorenzo B.*, 2020 WL 4732063, at *1 (citing *Webb*, 433 F.3d at 686–87); *see also Melendez v. Comm'r of Soc. Sec.*, No. 17-CV-299-FPG, 2020 WL 4274510, at *2 (W.D.N.Y. July 2020) ("[T]he threshold for establishing a severe impairment at step two is extremely low and an ALJ should only deem an impairment non-severe if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work."); *Shah v. Comm'r of Soc. Sec.*, No. 2:19-CV-1184-KJN, 2020 WL 2992121, at *3 (E.D. Cal. June 2020) ("An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'").

 If a claimant demonstrates that he suffers from an impairment that affects his ability to perform basic work activities, "the ALJ must find that the impairment is 'severe' and move to the next step in the SSA's five-step process." *Edlund v. Massanari*, 253 F.3d 1152, 1160 (9th Cir. 2001) as amended on other grounds 2001 US. App. Lexis 17960. Basic work activities are "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Webb*, 433 F.3d at 686 (citing 20 C.F.R. § 404.1521(b)).

Under the Ninth Circuit's normal standard of review of the Step Two requirements, the Court must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. *Webb*, 433 F.3d at 687; *see also Smolen*, 80 F.3d at 1289–90 (finding that the evidence established that the claimant's impairments constituted more than a slight abnormality that had more than a minimal effect on her ability to do work and that the ALJ's finding at Step Two was not supported by substantial evidence). The ALJ

must "consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe," and is "required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity." *See Smolen*, 80 F.3d at 1290.

2. <u>Analysis</u>

As to his findings at Step Two regarding Plaintiff's severe impairments, the ALJ held that Plaintiff had "the following severe impairments: schizoaffective disorder, major depressive disorder, personality disorder, generalized anxiety disorder, and cannabis use disorder, mild, in early partial remission, degenerative disc disease in the cervical spine" all "significantly limit[ed Plaintiff's] ability to perform basic work activities as required by SSR 85-28." (ECF No. 15-2 at 19.)

The ALJ then noted that the Plaintiff had also "alleged disability due to [his] [. . .] cyclical vomiting disorder. However, there is no evidence that [this] impairment[ ] imposed any additional functional limitations beyond what have already been considered with the claimant's other impairments. Nonetheless, the symptoms from [this] impairment[ has] been considered in the residual functional capacity limitations found above." (*Id.*) The ALJ provided three reasons for finding Plaintiff's CVS as non-severe. (*Id.*) The Court will examine each reason in turn.

a. Asymptomatic / Sporadic Symptoms

In reasoning that Plaintiff's CVS was non-severe, the ALJ first reasoned that the "evidence in the record shows that the [Plaintiff's] symptoms were at times asymptomatic or only occurred sporadically[.]" (*Id.* at 20.) Step Two of the five-step sequential evaluation involves a two-step analysis when considering an individual's symptoms. SSR 16-3p. At Step 1, it must be determined whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's

symptoms. *Id.* At Step 2, the intensity and persistence of the individual's symptoms are evaluated to the extent to which they limit the ability to perform work-related activity. *Id.*

The ALJ accepted Plaintiff's CVS as a medically determinable impairment, thus satisfying Step 1. (*See* ECF No. 19 at 9) (Defendant conceding that the ALJ accepted CVS as a medically determinable impairment). The record also supports that Plaintiff suffered from CVS. On April 29, 2019, Plaintiff visited the Chase Avenue Family Health Center which noted that Plaintiff saw a gastroenterologist for his CVS. (*See* ECF No. 15-11 at 19.) These medical notes also indicated that Plaintiff scheduled another appointment in 6 weeks with Chase Avenue Family Health Center and was going to slowly transition to Elavil, while seeing his gastroenterologist in 2 months. (*Id.*) A March 24, 2018 disability report indicated that Plaintiff was taking Transform-Scopolimine for his CVS. (*See* ECF No. 15-6 at 7.) Then a list of medications from August 15, 2019 indicated that Plaintiff was taking Macsalt, Promethazine, Compacine, Reglin, and Ventil to treat his CVS. (*See id.* at 71–72.) The Court infers this to show that Plaintiff was actually suffering from CVS given the increase in medications prescribed by the doctors.As for Step 2, the ALJ cited to PA Patricia Castillo's August 17, 2018 notes and Gastroenterologist Dr. Ravinder Mittal's April 4, 2019 progress notes to support his reason that Plaintiff's symptoms were "asymptomatic or only occurred sporadically[.]" (*See* ECF No. 15-10 at 46 [B13F page 19], 143 [B15F page 2].) On August 17, 2018, PA Castillo noted that the reason for the visit was for Plaintiff's lab results and prescription refills. (ECF No. 15-10 at 46 [B13F page 19].) PA Castillo noted Plaintiff's complaints of having CVS twice since his last visit, but did not go to the emergency because he was able to handle it at home. (*Id.*) PA Castillo noted that Plaintiff denied any other complaints and currently denied any chest pain, heart palpitations, dizziness or vertigo. (*Id.*) PA Castillo listed CVS on Plaintiff's active problems list and prescribed medication for it. (*Id.* at 47–48.)

On April 4, 2019, Gastroenterologist Dr. Mittal's visit addressed whether Plaintiff was asymptomatic. (*See* ECF No. 15-10 at 143 [B15F page 2].) During this visit, Dr. Mittal stated the Plaintiff "had extensive evaluations, including 5 colonoscopies, 5 upper endoscopies, etc., and has not been found to have any significant issues." (*Id.* at 143 [B15F page 2].) However, Dr. Mittal also indicated that there are "no diagnostic tests" regarding CVS and that CVS is usually identified through clinically diagnoses. (*Id.*) Further, Dr. Mittal concluded that Plaintiff should possibly try another medication to help with his CVS, but would let the psychiatric physician prescribe it since Plaintiff is also taking psychotropic drugs. (*Id.* at 143–44.)

These two citations that the ALJ believed showed that Plaintiff's symptoms were sporadic or asymptomatic do not support discounting the many instances where he exhibited persistent and intense symptoms of CVS, was prescribed medication for his CVS and did not necessarily indicate that Plaintiff's CVS was non-severe.

June 23, 2017 Medical Notes showed that Plaintiff allegedly had an episode of chronic nausea and vomiting lasting 13 days with 3 ER visits. (*See* ECF No. 15-8 at 26–29.) The treating physician agreed with the CVS diagnosis and recommended using amitriptyline. (*Id.*) July 14, 2017 ER records showed a review of Plaintiff's systems were all normal, except for his severe vomiting and abdominal pain, and diagnosed the symptoms as acute moderate nausea and vomiting. (*See* ECF No. 15-7 at 154–56.) August 29, 2017 notes showed that vomiting was Plaintiff's primary symptom, after moaning on the gurney and vomiting clear stomach content. (*See* ECF No. 15-8 at 20–22.) An ER Record from October 10, 2017 showed that Plaintiff's chief complaint was his CVS and noted that Plaintiff's symptoms were consistent with CVS. (*See* ECF No. 15-7 at 148–49.)

On January 12, 2018, although he tried to wait it out at home, the Plaintiff was diagnosed with possible CVS after coming into the emergency room after allegedly having two to three days of vomiting. (*See* ECF No. 15-7 at 45–48.) A report from Logan Heights

Family Counseling on February 28, 2018 indicated that CVS may affect his progress in his chiropractic treatment for his neck and back issues.  (*See* ECF No. 15-9 at 13.)  The ER Record from March 16, 2018 indicated that Plaintiff was diagnosed with CVS after having allegedly vomited multiple times the day before.  (*See* ECF No. 15-7 at 144.)  Plaintiff's visit to the Family Health Centers of San Diego on April 24, 2018 listed CVS as one of his active problems, while approving gastric emptying and giving medications to treat his CVS.  (*See* ECF No. 15-10 at 99–100.)  Where on August 30, 2018 and January 30, 2019, Dr. Lufty noted that certain "HA" treatment would "trigger uncontrollable vomiting which has been hospitalized many times."  (*See id.* at 149, 153.)

September 13, 2018 Medical Notes diagnosed Plaintiff with CVS after coming into the ER moaning and crying on the gurney and indicated that his CVS was episodic, coming and going.  (*See* ECF No. 15-8 at 12.)  It noted that gastroenterology had diagnosed Plaintiff with CVS, which included a psychological component.  (*Id.*)  A Chase Avenue Family Health Center visit on April 29, 2019 noted that Plaintiff saw a gastroenterologist for his CVS, who wanted to put on Plaintiff on Elavil, but held off due to his psychiatric medications. (*See* ECF No. 15-11 at 19.)  Plaintiff was then scheduled another appointment in 6 weeks and was going to slowly transition to Elavil, while seeing his gastroenterologist in 2 months.  (*Id.*)  Further, a March 24, 2018 disability report indicated that Plaintiff was taking Transform-Scopolimine for his CVS.  (*See* ECF No. 15-6 at 7.)  Then a list of medications from August 15, 2019 indicated that Plaintiff was taking Macsalt, Promethazine, Compacine, Reglin, and Ventil to treat his CVS.  (*See id.* at 71–72.)

Further, Plaintiff testified as to the intensity and persistence of his CVS symptoms. Plaintiff claimed that his CVS would be symptomatic four to five times within a two-week period, with each cycle lasting hours to a few days.  (ECF No. 15-2 at 51.)  Plaintiff testified that while in public, he had to spend days in total agony trying to get out of a cycle.  (*Id.* at 59.)  Plaintiff attested to feeling very weak with the possibility of going unconscious or

acting out during his cycles.  (*Id.*)  Plaintiff indicated that he never knew when he was going to get sick, which had resulted in him being kicked off buses and missing doctor's appointments.  (*Id.* at 60.)  Plaintiff testified that he tried to take medication to prevent his CVS symptoms, but stated that "sometimes it doesn't work."  (*Id.* at 61.)  Plaintiff attested that his migraines could also lead to the start of his cyclical vomiting.  (*Id.* at 62.)  The ALJ never considered any of Plaintiff's subjective testimony as detailed above in making his conclusion that Plaintiff's symptoms were asymptomatic or only occurred sporadically. *Smolen*, 80 F.3d at 1290 (indicating that the ALJ's failure to consider Plaintiff's subjective testimony in making the severity determination was one of the reasons why the ALJ erred at Step Two).

In addition, courts have characterized CVS by "its episodic features and the way in which it waxes and wanes over time. [Which] is evident [by] periods of increased symptoms at times and fewer symptoms at other times[.]"  *Bates v. Colvin*, No. 3:13-CV-1659-L, 2014 WL 408052, at *8 (N.D. Tex. Jan. 2014) (citing Stedman's Medical Dictionary (27th ed. 2000) (describing CVS as "a syndrome of recurrent bouts of vomiting"); *Cyclic Vomiting Syndrome*, National Digestive Diseases Information Clearing House, U.S. DEPT. OF HEALTH AND HUMAN SERVICES, https://www.niddk.nih.gov/health-information/digestive-diseases/cyclic-vomiting-syndrome (last visited Jan. 13, 2022) (stating that CVS "is characterized by episodes or cycles of severe nausea and vomiting that last for hours, or even days, and that alternate with intervals with no symptoms . . . Episodes can be so severe that a person has to stay in bed for days, unable to go to school or work."); *Jackson v. Astrue*, No. 11–CV–6470T, 2012 WL 5423708 at *5 n. 4 (W.D.N.Y. 2012) ("[CVS] is characterized by episodes or cycles of severe nausea and vomiting that last for hours, or even days, and that alternate with intervals with no symptoms. [. . .] CVS is hard to diagnose because no tests-such as a blood test or x ray-can establish a diagnosis of CVS.").

The medical record established that Plaintiff suffered from persistent and intense symptoms of CVS. *Compare Ortiz v. Comm'r of Soc. Sec.*, 425 F. App'x 653, 655 (9th Cir. 2011) (finding that the ALJ erred at Step Two where there was not a "total absence of objective evidence of severe medical impairment" that would permit the Court to affirm "a finding of no disability at step two[,]" where there was evidence that the Plaintiff actually suffered from a severe impairment); *with Spence v. Colvin*, 617 F. App'x 752, 754 (9th Cir. 2015) (holding that the ALJ did not err in concluding the claimant lacked a severe mental impairment where there was "no objective medical evidence to support such suggestions of mental limitations" and "none of the medical records containe[ed] evidence of a mental limitation."). Further, CVS is episodic in nature. *See Gronbeck v. Schweiker*, 534 F. Supp. 642, 645–46 (D.S.D. 1982) (finding that a claimant suffering from sporadic or episodic symptoms have been found disabled). Therefore, the Court concludes that the ALJ's first rationale lacked substantial evidence to clearly establish that Plaintiff's CVS had only a slight abnormality that had no more than a minimal effect on an individual's ability to work.

### b.   Unremarkable CT Scan

Another reason the ALJ gave in finding Plaintiff's CVS as non-severe was due to a "CT scan of [Plaintiff's] abdomen from September 19, 2016 [which] was unremarkable[.]" (ECF No. 15-2 at 20.) However, "CVS is hard to diagnose because no tests-such as a blood test or x ray-can establish a diagnosis of CVS. A doctor must look at symptoms and medical history to rule out other common diseases or disorders that can cause nausea and vomiting." *See Jackson*, 2012 WL 5423708 at *5 n. 4). This fact was reiterated when Dr. Mittal noted that there are no real diagnostic tests regarding CVS and that CVS is usually identified through clinically diagnoses. (ECF No. 15–10 at 143 [B15F page 2].) The ALJ's reasoning that an unremarkable CT scan signified that Plaintiff's CVS was non-severe is not supported by substantial evidence. Many doctors following this September 19, 2016 CT

13

Scan diagnosed Plaintiff with CVS.  (*See* ECF Nos. 15-7 at 25 [January 13, 2018], 144 [March 16, 2018]; 15-8 at 13–14 [September 29, 2017], 29 [June 23, 2017], 34 [May 5, 2017], 40 [March 24, 2017]; 15-10 at 50 [April 4, 2018], 143 [April 4, 2019].)

Accordingly, the Court concludes the ALJ's second rationale does not support rejecting Plaintiff's CVS as non-severe.

c.   Failure to Follow Up with Gastroenterologist ("GI")

As for the ALJ's third reason for finding Plaintiff's CVS as non-severe, the ALJ indicated that the Plaintiff "also reported that he did not return to his gastroenterologist for further treatment, despite being recommended to do so[.]"  (ECF No. 15-2 at 20.)  The ALJ cited to PA Patricia Castillo's August 17, 2018 notes, which indicated that Plaintiff had not followed up with his gastroenterologist because Plaintiff was "still deciding on who he should go to" and "[did] not want to return to Dr. Alayo."  (*See id.*; *see also* ECF No. 15-10 at 46 [B13F page 19].)  There is no indication by PA Castillo in her August 17, 2018 notes that indicated she recommended further treatment with Plaintiff's GI, Dr. Alayo. Therefore, this third rationale lacks substantial evidence to support the ALJ's reason that PA Castillo recommended Plaintiff to return to Dr. Alayo.

Notwithstanding, the ALJ can consider a claimant's failure to follow a recommended treatment plan as a factor in determining whether the claimant's symptoms are severe.  *See Stenberg v. Comm'r Soc. Sec. Admin.*, 303 F. App'x 550, 552 (9th Cir. 2008).  However, if the ALJ disbelieves the Plaintiff's explanations as for failing to follow treatment or believes that there are insufficient reasons to explain his treatment history, "the ALJ is required to explain why."  *Jones v. Colvin*, 2016 WL 4798956, at *5 (N.D. Ill. Sept. 2016); *see also Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (finding that an ALJ "must first explore the claimant's reasons for the lack of medical care before drawing a negative inference.").  The ALJ is not free to base his evaluation on "Plaintiff's lack of medical care while omitting any discussion of evidence about Plaintiff's reasons for not seeking

treatment." *Jones*, 2016 WL 4798956, at *5 (citing *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) (Where ALJ discredited claimant's testimony based on a lack of treatment but overlooked evidence about her reasons, the "failure to explore [the] evidence was a legal error.")); *see also Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (ALJ must not draw inferences about a claimant's condition from a failure to seek care unless ALJ has explored claimant's explanations as to lack of medical care). Further, the Ninth Circuit has indicated that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."[3] *Regennitter v. Commissioner of Soc. Sec. Adm.*, 166 F.3d 1294, 1299–1300 (9th Cir. 1999).

Assuming arguendo that PA Castillo had recommended Plaintiff to return to his GI, Dr Alayo, PA Castillo's August 17, 2018 notes indicated that Plaintiff was unable to follow up with his GI because he was "still deciding on who he should go to, [and did] not want to return to Dr. Alayo." (*See* ECF No. 15-10 at 46 [B13F page 19].) The ALJ did not provide any discussion as to the validity of Plaintiff's reason for not following the recommendation. *See Jones*, 2016 WL 4798956, at *5 ("The ALJ's failure to explain how he considered Plaintiff's explanations for his gaps in treatment is an error requiring remand.").

Further, the ALJ also did not address other medical evidence regarding where Plaintiff actually did seek treatment, which did include Plaintiff seeing a GI. Dr. Alayo's October 17, 2016 report diagnosed Plaintiff with CVS and indicated there is "[n]o real treatment to prevent CVS." (ECF No. 15-7 at 16.) On November 2, 2018, PA Castillo noted that Plaintiff had not been able to follow up with his new GI for another opinion

---

[3] As to Plaintiff's severe impairments findings, the ALJ held that Plaintiff had the following mental disorders: "schizoaffective disorder, major depressive disorder, personality disorder, [and] generalized anxiety disorder[.]" (*See* ECF No. 15-2 at 19.) Additionally, September 29, 2017 Emergency Room notes diagnosed Plaintiff with CVS, and indicated that Plaintiff's CVS had a psychological component as well. (*See* ECF No. 15-8 at 13–14.)

about his CVS.  (ECF No. 15-11 at 206.)  Plaintiff then indicated that he will follow up with a GI and see if his insurance will cover one that is knowledgeable about CVS.  (*Id.* at 207.)  On December 6, 2018, PA Castillo noted that Plaintiff requested a referral for GI to treat his CVS.  (*id.*)

On April 4, 2019, GI Dr. Mittal saw Plaintiff and stated that "Mr. Black has cyclical vomiting syndrome" and that "there are no diagnostic tests" for his CVS.  (ECF No. 15-10 at 143–44.)  Dr. Mittal stated that "[w]ith regard to treatment, I think he has tried all sorts of antinausea medicines. One thing that does sometime work, based on the literature, is amitriptyline. [. . .] However, given how many other psychotropic drugs he is taking, I think if that were to be tried, it will have to be tried carefully and slowly."  (*Id.* at 143–44.)  Further, Plaintiff's April 29, 2019 Psychiatric/Medication Follow-Up noted that Plaintiff saw his GI for his CVS.  (ECF No. 15-11 at 19.)  PA Castillo's April 30, 2019 notes indicated that Plaintiff returned after being sent to a GI and was in discussion with mental health in regards to whether he is to receive amitriptyline based on GI Dr. Mittal's recommendation.  (*Id.* at 123.)  On May 22, 2019, Plaintiff then requested a new referral to see his GI.  (*Id.* at 124.)

While the ALJ based part of his evaluation on Plaintiff's failure to return to his GI, Dr. Alayo, the ALJ omitted any discussion of evidence about Plaintiff's reason for not returning.  The objective evidence showed that Plaintiff actually pursued treatment for his CVS, which included following up with a GI.  Therefore, the Court concludes that the ALJ's third rationale lacked substantial evidence to clearly establish that Plaintiff's CVS had only a slight abnormality that had no more than a minimal effect on an individual's ability to work.

### d.   Substantial Evidence

The Court must determine whether the ALJ's finding that Plaintiff's CVS was a non-severe impairment was supported by substantial evidence that clearly established that

Plaintiff's CVS had only a "slight abnormality that has no more than a minimal effect on an individual's ability to work." *See Vooge v. Saul*, 840 F. App'x 253, 254 (9th Cir. 2021) ("A 'severe impairment' must 'significantly limit[ ]' the claimant's 'physical or mental ability to do basic work activities.' [ ] An ALJ's conclusion that a claimant lacks a medically severe impairment or combination of impairments must be supported by substantial evidence.") (citing *Webb*, 433 F.3d at 686–87); *see also Bakewell v. Comm'r of Soc. Sec. Admin.*, 360 F. App'x 945, 946 (9th Cir. 2010) ("Accordingly, there is no substantial evidence supporting the ALJ's position that Bakewell's migraines do not 'significantly limit[ ] [her] physical or mental ability to do basic work activities,' 20 C.F.R. § 404.1520(c), as the ALJ's conclusion was based upon the erroneous factual finding that Bakewell's migraines are under control.").

As discussed above, the ALJ's Step Two reasons regarding Plaintiff's CVS were inadequate to support the ALJ's determination that Plaintiff's CVS was non-severe. The ALJ made no finding with respect to its effect on Plaintiff's ability to do work. *Webb*, 433 F.3d at 686–87; *see also DeRohn v. Astrue*, 188 Soc. Sec. Rep. Serv. 851, 2013 WL 1628914 (D. Md. 2013) ("[W]hile the ALJ found Plaintiff's ITP not severe, he made no finding with respect to its effect of Plaintiff's ability to do work; and therefore the Court has no basis to discern support for his finding.").

The record as a whole provided substantial evidence that Plaintiff suffers from CVS, which "significantly limit[ed] [his] physical or mental ability to do basic work activities." *See Vooge*, 840 F. App'x at 254 (citing *Webb*, 433 F.3d at 687); *Lorenzo B.*, 2020 WL 4732063, at *1.

First, the medical evidence produced showed that Plaintiff had suffered from and had been treated for CVS. For example, on June 23, 2017, the medical notes showed that Plaintiff complained of chronic nausea and vomiting lasting for 13 days with 3 ER visits. (ECF No. 15-8 at 26.) The assessment section indicated that the physician would agree

with the previous CVS diagnosis and would consider amitriptyline for treatment. (*Id.* at 29.) The emergency record from July 14, 2017 indicated that a review of Plaintiff's systems indicated everything was normal, except for severe abdominal pain and vomiting. (ECF No. 15-7 at 156.) The impression and diagnosis indicated that plaintiff had acute moderate nausea and vomiting. (*Id.* at 154.) Emergency Room notes from October 10, 2017 indicated Plaintiff's chief complaint was his CVS. (*Id.* at 148.) The treating physician detailed Plaintiff's symptoms and indicated that they were all consistent with CVS. (*Id.* at 149.) The note's final impression indicated that the acute severe pain was consistent with CVS. (*Id.*)

Emergency Room notes from January 12, 2018 indicated that Plaintiff had probable CVS and that he was to receive symptomatic treatment to see if symptoms got better. (ECF No. 15-7 at 48.) The March 16, 2018 Emergency Room Notes indicated that Plaintiff presented signs of CVS and diagnostic impression indicated that Plaintiff suffered from CVS, nausea and vomiting. (*Id.* at 144.) A visit to the Family Health Center of San Diego on April 24, 2018 showed that they address Plaintiff's CVS and approved Plaintiff for treatment of his CVS, gastric emptying, but was awaiting to make an appointment. (ECF No. 15-10 at 99.) The notes listed CVS as an active problem and Plaintiff was given medication to treat his CVS. (*Id.* at 100.)

Further, there were two notes from the Family Health Center of San Diego that indicated that some treatment may trigger the uncontrollable vomiting for which Plaintiff had been hospitalized many times. (*Id.* at 149, 153.) Plaintiff's April 29, 2019 Psychiatric/Medication Follow-Up showed that Plaintiff saw his GI for his CVS, who wanted to put Plaintiff on Elavil, but held off due to his other psychiatric medications. (ECF No. 15-11 at 19.) The notes stated that Plaintiff will see his GI in 2 months and will slowly transition to Elavil to treat his CVS. (*Id.*) As for his medications for CVS, Plaintiff was taking Transform-Scopolimine on March 24, 2018. (ECF No. 15-6 at 7.) Then on

August 15, 2019, Plaintiff was given more medications to treat his CVS, which included Macsalt, Promethazine, Compacine, Reglin, and Ventil. (*Id.* at 71–72.) This can lead the Court to infer that Plaintiff actually suffered from CVS given the increase in medications.

Additionally, the medical evidence produced also indicated that Plaintiff's CVS significantly limited his ability to undertake basic work activities due to having to deal with symptoms of CVS. *See Vooge*, 840 F. App'x at 254. For example, Dr. Alayo's October 17, 2016 consultation indicated that Plaintiff had this issue since 2001 and his episodes are on and off. (ECF No. 15-7 at 15.) Dr. Alayo then indicated that there is no real treatment to prevent CVS. (*Id* at 16.) Medical Notes from May 5, 2017 diagnosed Plaintiff with an acute exacerbation of CVS, while moaning on hospital bed due to flare up of CVS and pain. (ECF No. 15-8 at 33–35.) Emergency Documentation from May 9, 2017 indicated that Plaintiff complained of having his symptoms for four days prior and had difficulty keeping food and liquids down. (ECF No. 15-7 at 34, 36, 38, 57.) The May 24, 2017 Medical Notes stated that Plaintiff's chief complaint was vomiting and reported having symptoms for 10 days and was unable to keep anything down. (ECF No. 15-8 at 29–30.)

From the June 23, 2017 medical notes, Plaintiff complained of chronic nausea and vomiting lasting for 13 days with 3 ER visits. (*Id.* at 26.) July 12, 2017 Progress notes from Sharp Memorial Hospital indicated that Plaintiff complained of vomiting for two days. (ECF No. 15-7 at 3.) Dr. Alayo's notes from July 31, 2017 indicated that Plaintiff still had episodes of nausea and vomiting. (*Id.* at 17.) Dr. Alayo indicated that Plaintiff had CVS and gastro-esophageal reflux disease without esophagitis. (*Id.* at 17.) Medical Notes from August 29, 2017 indicated that one of Plaintiff's primary symptoms was vomiting and that he started to moan on the gurney and vomited up clear stomach content. (ECF No. 15-8 at 20–22.) Plaintiff complained that the pain and vomiting came in waves and was 10 out of 10. (*Id.* at 20–21.) Emergency Room notes from September 29, 2017 indicated that Plaintiff was brought in on a gurney moaning and crying with pain that is

associated with CVS, which is episodic.  (*Id.* at 12.)  The notes diagnosed Plaintiff with CVS, which had a psychological component.  (*Id.* at 13–14.)  October 2, 2017 notes from the Family Health Center of San Diego indicated that Plaintiff recently had two weeks of CVS symptoms, which are triggered by stress, and went to ER.  (ECF No. 15-10 at 20.)

Emergency Room notes from January 12, 2018 indicated that Plaintiff had CVS and that he was to receive symptomatic treatment to see if symptoms got better.  (ECF No. 15-7 at 22, 25, 45.)  Plaintiff reported that he was vomiting for 2 to 3 days and tried to wait it out at home, but had to come to the ER to get relief.  (*Id.*)  An examination report from February 28, 2018, indicated that among other issues, Plaintiff's CVS can affect the progress of his chiropractic treatment.  (ECF No. 15-9 at 13.)  Encounter Notes from March 26, 2018 represented that Plaintiff had been cycling with his nausea and vomiting for one and a half weeks and that it was hard for him to keep his psychiatric medications down due to his CVS.  (*Id.* at 35–36.)

There was statement in the medical evidence from Mike Warner on April 1, 2018 that indicated that Plaintiff's symptoms from CVS could last for days, if not weeks, and that Plaintiff would have to go to the emergency to treat his vomiting.[4]  (ECF No. 15-6 at 20.)  There was also a statement in the medical evidence from Adam Pratter that touched upon that since Plaintiff couldn't handle stressful situations, he would vomit a lot when stressed.  (*Id.* at 24.)  Mr. Pratter indicated that he cared for the Plaintiff when he felt nauseas and vomiting, while indicating that Plaintiff's illness can last for days or weeks and would eventually have to go to the emergency to be treated.  (*Id.* at 33.)  A letter from Evan Ingle, RN, indicated that he had seen Plaintiff with uncontrollable CVS, happening almost every month and lasting for days, or even weeks, at a time. (ECF No. 15-8 at 97.)

---

[4] The Vocational Expert testified that staying off task fifteen percent or more a day, or missing on average one day a week or four days per month, would preclude Plaintiff from all work.  (ECF No. 15-2 at 66.)

RN Ingle indicated that Plaintiff is not functional and incapacitated when he has these episodes with CVS.  (*Id.*)  RN Ingle stated that he has seen Plaintiff for two years, with Plaintiff appearing worse, and does not know how Plaintiff can keep employment or live a normal life due to the frequency of his illness.  (*Id.*)  Even in the disability report, Plaintiff indicated that his symptoms had changed to where his vomiting has lasted up to 5–10 days. (ECF No. 15-6 at 50.)  Further, PA Castillo's June 19, 2019 encounter stated that Plaintiff's showed that he had CVS about once a week, lasting for few hours or days, while always feeling nauseas.  (ECF No. 15-10 at 167.)

This medical evidence establishes that Plaintiff met the de minimis standard at Step Two of the sequential evaluation in proving that his CVS constituted a severe impairment. The ALJ did not discuss any of this evidence, nor did he explain how the medical evidence supported his conclusion that Plaintiff's CVS did not impact his ability to work.  *See Latrice M. v. Comm'r of Soc. Sec.*, No. CV 19-5377-KS, 2020 WL 1676380, at *10 (C.D. Cal. Apr. 2020) (finding that the evidence may have shown that the impairment had an impact on her functional ability and the ALJ should have "at the very least, [ ] explained how the record evidence supported [the ALJ's] conclusion that Plaintiff's cardiac impairment did not impact her ability to do work activity.").

Based on a review of the record, it cannot be said that Plaintiff's CVS was so slight and trivial that it would produce only a minimal effect on Plaintiff's ability to work.  *See*, *e.g.*, *Tadesse v. Kijakazi*, No. 20-16064, 2021 WL 5600149, at *1 (9th Cir. Nov. 2021) (finding that the ALJ erred when "the evidence relied on by the ALJ [did] not support a finding that [Plaintiff's] mental impairment had only a minimal impact on social functioning and pace, persistence and concentration[.]").  Therefore, the Court finds that the ALJ's determination that Plaintiff's CVS was a non-severe impairment was not supported by substantial evidence.

*///*

### 3.  Harmless Error

Even if the ALJ erred in finding that Plaintiff's CVS was non-severe, any failure to classify an impairment as non-severe at Step Two is harmless if the ALJ considered the limitations posed by the impairment at a later step in the inquiry.  *See McGuire v. Kijakazi*, No. 20-35898, 2021 WL 5861284, at *1 (9th Cir. Dec. 2021) (finding that the ALJ's error at Step 2 was harmless since the ALJ considered the non-severe impairment later in the inquiry); *Michaud v. Saul*, No. 18-cv-02625-JLS-MDD, 2019 WL 5684411, at *3 (S.D. Cal. Nov. 2019) (finding that the ALJ erred at Step 2 and remanded the case since "the ALJ did not consider effects of photophobia at subsequent steps of the sequential evaluation"); *Tadesse*, 2021 WL 5600149, at *1 ("Although an error at step two may be considered harmless where, as here, the ALJ moves to the next step in the analysis, the decision must reflect that the ALJ considered any limitations posed by the impairment at either step four or step five."); *see also Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding Step 2 error harmless when the "ALJ extensively discussed [claimant's] bursitis at Step 4 of the analysis"); *Susan B. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 225, 236 (D. Vt. 2021) ("[R]emand is not warranted where the ALJ 'identifies some severe impairments at Step [Two], and then proceeds through [the] sequential evaluation on the basis of [the] combined effects of all impairments, including those erroneously found to be non-severe[.]'").

Specifically, the ALJ is required to assess all of a Plaintiff's medically determinable impairments, including those that are non-severe, in combination when making the subsequent RFC determination.  *See* 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2); *see also Weitzel v. Colvin*, 967 F. Supp. 2d 1089, 1097 (M.D. Pa. 2013) ("[A]ll of the medically determinable impairments both severe and non-severe must be considered at step two and then at step four when setting the residual functional capacity."). "An ALJ is required to consider all impairments, severe and non-severe, because '[e]ven a

mild impairment can put a disproportionately greater strain on a person who concurrently is suffering from a more severe affliction.'" *See Verlee v. Astrue*, No. 1:12-CV-45-TLS-RBC, 2013 WL 1760810, at *3 (N.D. Ind. Apr. 2013).

The ALJ did not specifically address Plaintiff's CVS at any later step in his inquiry. (*See* ECF No 15-2 at 20–33.)  The only other time the ALJ discussed vomiting in general was in the RFC determination regarding Plaintiff's dehydration.  (*Id.* at 25.)  The ALJ indicated in a March 18, 2018 examination that the Plaintiff's "lab reports showed he was dehydrated due to decreased fluid intake but not due to vomiting[.]"  (*Id.*)  There is no clear indication that the ALJ actually considered Plaintiff's CVS at a later step in the inquiry. Since the ALJ omitted any further meaningful reference to Plaintiff's CVS, the Court cannot find the ALJ's error regarding his determination that Plaintiff's CVS was non-severe as harmless.  *Lewis*, 498 F.3d at 911; *cf. also Delgado v. Comm'r.*, 500 F. App'x 570 (9th Cir. 2012) (finding error at Step Two where ALJ disregarded minimal evidence from plaintiff's physician regarding his impairments, and reversing where ALJ stopped at Step Two); *Ormberg v. Astrue*, 254 F. App'x 589, 590–91 (9th Cir. 2007) (finding error at Step Two for failing to consider medical evidence of sleep apnea at step two, and reversing because "[p]laintiff's sleep apnea imposed additional functional limitations not considered by the ALJ at the later steps of the process."); *with Cramer v. Berryhill*, 706 F. App'x 385 (9th Cir. 2017) (finding any error to find impairments severe at Step Two to be harmless because ALJ considered them in formulating RFC).

## B. Remand is Required

"The rare circumstances that result in a direct award of benefits are not present in this case." *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017).  "When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Id.* at 1045 (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)).  The credit-as-true analysis

1   "permits, but does not require, a direct award of benefits on review but only where the

2   [ALJ] has not provided sufficient reasoning for rejecting testimony and there are no

3   outstanding issues on which further proceedings in the administrative court would be

4   useful." *Id.* at 1044.  Under the three-part rule, the Court first considers "whether the 'ALJ

5   failed to provide legally sufficient reasons for rejecting evidence[.]'" *Id.* at 1045 (quoting

6   *Garrison*, 759 F.3d at 1019).  This step is met for the reasons set forth above.

7       However, at the second step, the Court considers "whether there are 'outstanding

8   issues that must be resolved before a disability determination can be made' and whether

9   further administrative proceedings would be useful.'" *Id.* (quoting *Treichler*, 775 F.3d at

10   1101).  "In evaluating this issue, [the Court] consider[s] whether the record as a whole is

11   free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and

12   whether the claimant's entitlement to benefits is clear under the applicable legal rules."

13   *Treichler*, 775 F3d at 1104–05.  "Where . . . an ALJ makes a legal error, but the record is

14   uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* at

15   1105.  When, as here, the ALJ's finding as to Plaintiff's CVS as a non-severe impairment

16   was inadequate, remand for further findings is appropriate.  *See Hunt v. Colvin*, No. 2:15-

17   CV-0509-DB, 2017 WL 117943, at *4 (E.D. Cal. Jan. 2017) (finding that further

18   administrative procedures would serve a useful purpose after finding that the ALJ erred at

19   Step Two).

20       As discussed above, the ALJ failed to properly evaluate the medical record as a

21   whole.  The ALJ's findings are inadequate and further administrative review may remedy

22   the ALJ's errors, making remand appropriate in this case.  *See Ghanim v. Colvin*, 763 F.3d

23   1154, 1166 (9th Cir. 2014); *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011); *Byrnes

24   v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995).  The Court is not going to create reasons that

25   the ALJ did not give or support in his findings, however, the Court does find that further

26   administrative proceedings are necessary to allow the ALJ to do this sequential evaluation

27

28

under these circumstances. *Webb*, 433 F.3d at 687 ("[I]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step."). The Court finds that remand is proper in this case, since not all factual issues have been resolved and it is not clear whether the Plaintiff is entitled to benefits under the applicable legal rules. *See Treichler*, 775 F3d at 1104–05.

### C. The Court Declines to Address Plaintiff's Remaining Argument

Having found that remand is warranted, the Court declines to address Plaintiff's remaining argument as to whether the ALJ's findings as to Plaintiff's mental impairments were not based on substantial evidence. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *Hunt*, 2017 WL 117943, at *4 ("In light of the remand required by the ALJ's error at step two of the sequential evaluation, the court need not address plaintiff's remaining claims."); *see also Wanda v. Saul*, No. EDCV 20-0772-RAO, 2021 WL 515616, at *5 (C.D. Cal. Feb. 2021) ("Having found that remand is warranted, the Court declines to address Plaintiff's remaining issue."); *Kershner v. Saul*, No. 2:18-CV-0717-DB, 2020 WL 5366520, at *4 n.5 (E.D. Cal. Sept. 2020) ("Given the ALJ's error, that correction of the error may alter the entirety of the ALJ's opinion, and in light of plaintiff's request that this matter be remanded for further proceedings, the court finds it unnecessary to reach plaintiff's remaining claims of error."); *Newton v. Colvin*, No. 2:13–cv–2458–GEB–EFB, 2015 WL 1136477, at *6 n.4 (E.D. Cal. Mar. 2015) ("As the matter must be remanded for further consideration of the medical evidence, the court declines to address plaintiff's remaining arguments."); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

1 | **VI.     CONCLUSION**

2 | Based on the above reasoning, Plaintiff's Motion for Summary Judgment (ECF No.

3 | 16) is **GRANTED**, the Commissioner's Cross-Motion for Summary Judgment (ECF No.

4 | 19) is **DENIED**, and the case is **REMANDED** for further proceedings.

5 | **IT IS SO ORDERED**.

6 | Dated:  January 20, 2022

7 | Hon. Bernard G. Skomal

8 | United States Magistrate Judge